UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTERDIGITAL TECHNOLOGY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PEGATRON CORPORATION,<br><br>Defendant. | Case No. 15-CV-02584-LHK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 12 |

Before the Court is a motion for temporary restraining order and preliminary injunction filed by Plaintiffs InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital, Inc. (collectively, "Plaintiffs" or "InterDigital"). ECF No. 12 ("Motion"). InterDigital requests that the Court issue an anti-suit injunction prohibiting Defendant Pegatron Corporation ("Pegatron") from prosecuting or pursuing an action filed by Pegatron in Taiwan's Intellectual Property Court. *See* ECF No. 12; ECF No. 12-13 ("Proposed Order"). Having considered the submissions of the parties, the record in this case, and the relevant law, the Court hereby GRANTS InterDigital's Motion, for the reasons stated below.

I.   **BACKGROUND**

    A.   **Factual Background**

Plaintiff InterDigital, Inc. is a Pennsylvania corporation having its principal place of business in Delaware. ECF No. 1 ("Compl.") ¶ 7. Plaintiffs InterDigital Technology Corporation and IPR Licensing, Inc. are both Delaware corporations having their principal place of business in Delaware, and each is a subsidiary of Plaintiff InterDigital, Inc. *Id.* ¶¶ 5-6; *id.* at 2 n.4. InterDigital contends it "develops fundamental wireless technologies that are at the core of mobile devices, networks, and services worldwide." *Id.* ¶ 1.

Defendant Pegatron is an electronics company based in Taipei, Taiwan "dedicated to the development and manufacture of computing devices, computer peripherals and components, and communications and consumer electronics." ECF No. 33 at 3. According to the Complaint, "Pegatron develops and manufactures various wireless communication devices, including certain smartphones for Apple, Inc., such as the iPhone 6." Compl. ¶ 8.

### 1. Patent License Agreement

In 2008, InterDigital and Pegatron signed a Patent License Agreement ("PLA").[1] ECF No. 10-2. Pursuant to the terms of the PLA, InterDigital granted Pegatron a worldwide license to a large portfolio of patents relating to wireless telecommunications technology. *See id.* The Vice President of InterDigital, Mr. Donald Boles, signed the agreement on behalf of the InterDigital entities on April 18, 2008. *Id.* at 17. The CEO and President of Pegatron, Mr. Jason Cheng, signed the agreement on behalf of Pegatron on April 30, 2008. *Id.*

The PLA contained two provisions relevant to the instant dispute: (1) a dispute resolution provision, and (2) a governing law and venue provision. Each is addressed in turn.

#### a. Dispute Resolution

Article VI of the PLA is titled "Dispute Resolution" and contains sections 5.1 and 5.2 which outline dispute resolution procedures for disputes arising under the PLA. Specifically, in the event of "a dispute arising under this Agreement," senior-level executives of each party shall

---

[1] Much of the parties' briefing and accompanying exhibits was filed under seal. The Court will rule on the parties' administrative sealing motions by separate order. However, the facts revealed in the instant order, despite citing to documents the parties filed entirely under seal, are not sealable.

2
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

meet in Wilmington, Delaware or another location to which the parties agree within sixty days after receiving written notice of the dispute. PLA at § 5.1. The parties are then to enter into "good faith" negotiations aimed at resolving the dispute. *Id.* If the parties are unable to resolve the dispute in a mutually satisfactory manner within sixty days following the meeting, then either party may submit the dispute to arbitration. *Id.* Under the arbitration provision, the arbitration is to occur in Washington, D.C., in English, before a panel of three arbitrators. *Id.* § 5.2. The parties have submitted prior disputes to arbitration pursuant to these provisions. *See, e.g.*, *InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 24, 2013), ECF No. 9 (order confirming Arbitration Award in favor of InterDigital).

### b. Governing Law and Venue

Section 6.10 of the PLA, titled "Governing Law/Venue," also provides that "[t]he validity and interpretation of this Agreement shall be governed by Delaware law, without regard to conflict of laws principles." PLA § 6.10. The section further provides that "[t]he Parties irrevocably consent to exclusive jurisdiction and venue of the state and federal courts in the San Jose Division of the United States District Court for the Northern District of California." *Id.*

### 2. Taiwan Proceedings

On February 3, 2015, Pegatron filed a lawsuit against InterDigital in Taiwan Intellectual Property Court. *Pegatron Corp. v. InterDigital Tech. Corp.*, 104-Min-Pu-Tze-No. 17. *See, e.g.*, ECF No. 10-6 ("Taiwan Action"). In the Taiwan Action, Pegatron alleged that the royalty rates and terms of the PLA violate the Taiwan Fair Trade Act. Specifically, Pegatron alleged that certain terms of the PLA were unlawful under Taiwanese law and identified the following obligations pursuant to the PLA as unlawful:

> [InterDigital] granting a license to Pegatron but refusing to even provide a full list of the Licensed Patents; and even if the Licensed Patents include the standard essential patents, as claimed by the defendants, the validity of such patents is doubtful, but [InterDigital] restricted Pegatron from challenging the patents' validity; there is no way to distinguish the standard essential patents from the non-standard essential patents; the scope and term of the Licensed Patents are unclear; [InterDigital] licensed standard essential patents with non-standard essential patents, which involving [sic]

3
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

> mandatory package licensing; [InterDigital] deprived Pegatron its basic right to terminate the PLA and to seek a reasonable legal remedy; and [InterDigital] refused to provide transparent transaction information.

Taiwan Action at 4. For relief, Pegatron sought to enjoin InterDigital from enforcing the terms of the PLA and, additionally, sought damages in excess of $52 million. *Id.* at 1.

On May 26, 2015, InterDigital was served with a copy of the Complaint in the Taiwan Action. ECF No. 10-13 ¶ 24. At that time, InterDigital first became aware that the Taiwan Court had already scheduled a hearing for the Taiwan Action two weeks later, on June 9, 2015. *Id.* ¶ 25. On the evening of May 26, InterDigital called the Taiwan Court, seeking an extension of the June 9 hearing. *Id.* The Taiwan Court agreed to reschedule the hearing from June 9, 2015 to July 7, 2015, even though InterDigital sought a longer extension.

The next day, on May 27, 2015, InterDigital sent a letter to Pegatron providing a Notice of Dispute under the PLA, demanding that Pegatron withdraw the Taiwan Action and initiate the senior-level meetings required pursuant to the dispute resolution provisions in the PLA. *Id.* ¶ 26. On June 1, 2015, Pegatron responded, refusing to withdraw the Taiwan Action and, similarly, refusing to engage in the protocol for dispute resolution outlined in the PLA. *Id.* ¶ 27. On June 5, 2015, InterDigital filed a demand for arbitration pursuant to the procedures outlined in the PLA. *Id.* ¶ 28.

**B.   Procedural History**

On June 10, 2015, InterDigital filed its Complaint in the instant action. Compl. The gravamen of InterDigital's Complaint is that Pegatron's filing of the Taiwan Action constitutes a breach of the PLA. *See id.* For relief, InterDigital seeks (1) an anti-suit injunction, enjoining Pegatron from prosecuting the Taiwan Action, (2) specific performance requiring Pegatron to comply with the dispute resolution procedures outlined in the PLA, and (3) and order compelling arbitration of the parties' dispute pursuant to the provisions outlined in the PLA. *See id.*

On June 11, 2015, InterDigital filed the instant Motion seeking a temporary restraining order and the issuance of a preliminary anti-suit injunction, enjoining Pegatron from further prosecution of the Taiwan Action. ECF No. 12. Also on June 11, 2015, InterDigital filed an

1  administrative motion to relate the instant case with either (a) the prior proceeding in this district
2  before Judge Davila that had confirmed the award from the parties' prior arbitration or (b) a
3  pending proceeding in this district before Judge Freeman where Asus and Asustek[2] sued
4  InterDigital over a nearly identical license agreement.  *See InterDigital Tech. Corp. v. Pegatron*
5  *Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 11, 2015), ECF No. 17.  On June 15, 2015, Judge
6  Davila denied InterDigital's motion to relate the instant case to the case over which he previously
7  presided.  *See InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June
8  15, 2015), ECF No. 19.  Later that day, Judge Freeman also denied InterDigital's motion to relate
9  the instant case to the case pending before her and involving a similar dispute between Asus,
10 Asustek, and InterDigital.  *Asus Computer Int'l v. InterDigital, Inc.*, No. 15-CV-1716-BLF (N.D.
11 Cal. June 15, 2015), ECF No. 43.  Accordingly, on June 15, 2015, this Court set a briefing
12 schedule for the instant Motion.  ECF No. 27.  On June 22, 2015, Pegatron filed an opposition
13 (ECF No. 33), and on June 24, 2015, InterDigital filed a reply (ECF No. 36).

## II.    LEGAL STANDARD

Preliminary relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. The plaintiff bears the burden of proof on each element. *Klein v. San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts," and "such discretion must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006).

However, the Ninth Circuit does not require a party to meet the "likelihood of success on

---

[2] In 2008, Asustek was the parent company of Pegatron.  *See InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 11, 2015), ECF No. 17 at 1.

5
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

the merits of the underlying claim to obtain an anti-suit injunction." *E&J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006). Rather, a party "need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *Id.* Specifically, "a district court, in evaluating a request for an anti-suit injunction, must determine (1) whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable." *Applied Med. Distrib. v. Surgical Co.*, 587 F.3d 909, 913 (9th Cir. 2009) (citing *Gallo*, 446 F.3d at 991, 994). "The [anti-suit] injunction operates in personam: the American court enjoins the claimant, not the foreign court." *Gallo*, 446 F.3d at 989.

## III. DISCUSSION

### A. Anti-Suit Injunction Factors

InterDigital argues that each of the anti-suit injunction factors weighs in favor of an anti-suit injunction in this case. ECF No. 12 at 10-14. Pegatron argues that each weighs against an anti-suit injunction in this case. ECF No. 33 at 7-13. Each of the factors is addressed in turn.

#### 1. Similarity of the issues[3]

InterDigital argues that the issues in the instant case are the same as those in the Taiwan Action. ECF No. 13 at 10-11. Specifically, InterDigital contends that Pegatron's Taiwan Action seeks (a) to enjoin InterDigital from enforcing the terms of the PLA and (b) a refund of past royalty payments made by Pegatron to InterDigital pursuant to the PLA. *Id.* Because the dispute arises under obligations imposed by the PLA, InterDigital contends the dispute should be handled by the dispute resolution mechanisms in the PLA or by this Court pursuant to the forum selection clause. *Id.* Pegatron responds that the issues are different because the Taiwan Action "presents

---

[3] Neither party disputes that the parties in the instant case are identical to the parties in the Taiwan Action. *See* ECF No. 12 at 10; ECF No. 33 at 8. In the instant case, the plaintiffs are three InterDigital entities, and the defendant is Pegatron. *See* Compl. In the Taiwan Action, Pegatron is the plaintiff, and the same three InterDigital entities are defendants. *See* Taiwan Action at 1. The Court, therefore, focuses its analysis on the similarity of the issues.

6
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

the question of whether InterDigital's market position and conduct amount to a violation . . . under Taiwanese law." ECF No. 33 at 9.  The Taiwan Action therefore arises under Taiwanese law, argues Pegatron, and does not arise under the PLA for purposes of the arbitration provision.  *Id.*  Pegatron also argues that the instant case, involving the enforcement of the venue and arbitration clauses of the PLA, is not dispositive of any issue, let alone all issues, raised in the Taiwan Action.  *Id.* at 10.  For the reasons explained below, this Court agrees with InterDigital.

"In cases like this where the parties are the same, whether [1] the issues are the same and [2] the first action [is] dispositive of the action to be enjoined are interrelated requirements; that is, to the extent the domestic action is capable of disposing of all the issues in the foreign action and all the issues in the foreign action fall under the forum selection clause, the issues are meaningfully 'the same.'"  *Applied*, 587 F.3d at 915.  The issues need not be "precisely and verbally identical," and instead "the crux of the functional inquiry . . . is to determine whether the issues are the same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the local action."  *Id.*  The Court finds the Ninth Circuit's decisions in *Gallo* and *Applied* instructive.  In both cases, the district court had denied an anti-suit injunction, and in both cases, the Ninth Circuit reversed the district court for an abuse of discretion.

In *Gallo*, California winemaker Gallo entered a distribution agreement with Ecuadorian alcohol distributor Andina Licores.  446 F.3d at 987.  The distribution agreement contained forum selection and choice-of-law clauses in favor of California.  *Id.*  Andina filed suit in Ecuador under an Ecuadorian law that was intended to protect Ecuadorians who entered into distribution agreements with foreign entities.  *Id.*  Gallo then filed suit in California and sought an anti-suit injunction restraining Andina from pursuing the action in Ecuador.  *Id.* at 987-88.  The district court denied Gallo's request for an anti-suit injunction primarily because the claims arose under different laws—one under California law and the other under Ecuadorian law.  *Id.* at 991.  In reversing, the Ninth Circuit determined (1) the issues were the same because both arose out of the parties' obligations under the distribution agreement, (2) the parties' agreement provided that such

7
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

disputes were to be exclusively resolved in California, and (3) California courts could resolve any lingering issues of Ecuadorian law. *See id.* The Ninth Circuit rejected Andina's argument that the issues were not the same, holding: "First, it is not clear that Andina has claims under Ecuadorian law, as the contract contains a choice-of-law clause in favor of California. Second, to the degree that Ecuadorian law does apply, federal courts are capable of applying it to Andina's claims." *Id.*

Similarly, in *Applied*, Applied entered a distribution agreement with BV ("Surgical"), a Netherlands company. 587 F.3d at 911. The distribution agreement contained forum selection and choice-of-law clauses in favor of California. *Id.* ("This Agreement shall be governed by and construed under the laws of the State of California. The federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement."). A dispute arose between Applied and Surgical when Applied sought to terminate the distribution agreement pursuant to the terms of the agreement. *Id.* at 912. Applied filed a declaratory judgment action in the Central District of California, while Surgical filed suit in Belgium seeking protection and compensation under Belgian law. *Id.* Applied sought an anti-suit injunction from the California court enjoining Surgical from pursuing relief in Belgium or any other non-California forum. *Id.* The district court denied Applied's request for an anti-suit injunction, determining that the Belgium claims were "potentially broader" than the claims under consideration by the district court. *Id.* at 913. The Ninth Circuit reversed and held that the district court action "is dispositive of the Belgian action because all of the claims in the Belgian action arise out of the Agreement, are subject to the forum selection clause, and therefore must be disposed of in the California forum if at all." *Id.* at 916 (internal quotation omitted). The Ninth Circuit rejected Surgical's argument that the Belgian claims were broader than the claims at issue in federal district court because Surgical's Belgian claims sought damages that occur only as a result of obligations imposed upon the parties by the distribution agreement. *Id.* at 916-17 (finding none of Surgical's Belgian claims "could arise but for the termination of the agreement."). As discussed below, the Court finds the instant case analogous to *Gallo* and *Applied*.

      **a.**      **Taiwan Action arises under the PLA**

8

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

In the instant case, Pegatron's Taiwan Action arises solely because of the parties' obligations pursuant to the PLA. The Taiwan Action alleges that the terms of the PLA and the obligations imposed therefrom violate the antitrust laws of Taiwan. Specifically, the Taiwan Action alleges that the terms of the PLA impose the following, allegedly unlawful, obligations:

> [InterDigital] granting a license to Pegatron but refusing to even provide a full list of the Licensed Patents; and even if the Licensed Patents include the standard essential patents, as claimed by the defendants, the validity of such patents is doubtful, but [InterDigital] restricted Pegatron from challenging the patents' validity; there is no way to distinguish the standard essential patents from the non-standard essential patents; the scope and term of the Licensed Patents are unclear; [InterDigital] licensed standard essential patents with non-standard essential patents, which involving [sic] mandatory package licensing; [InterDigital] deprived Pegatron its basic right to terminate the PLA and to seek a reasonable legal remedy; and [InterDigital] refused to provide transparent transaction information.

Taiwan Action at 1, 4. In the Taiwan Action, Pegatron seeks (a) to enjoin InterDigital from "enforcing Article 3.1 of the [PLA] which was entered into with Pegatron in April 2008" and (b) to recover damages in excess of $52 million because Pegatron alleges to have "paid exorbitant royalties for more than 100,000,000 units of its Licensed Products" "[a]fter Pegatron entered into the PLA in 2008 and performed its obligation in accordance with the PLA until the end of 2014." *Id.* at 1-2, 5. The causes of action alleged in the Taiwan Action arise out of the parties' obligations pursuant to the PLA, refer to specific provisions of the PLA, attach as an exhibit to the complaint a copy of the PLA, and involve a dispute over the alleged illegality under Taiwanese law of various provisions of the PLA. *See generally id.* Accordingly, the Court determines that the Taiwan Action arises under the PLA.

### b. The dispute resolution, governing law, and forum selection provisions of the PLA govern

The dispute resolution, governing law, and forum selection provisions outlined in the PLA govern disputes arising under the PLA, such as this one, and vest this Court with exclusive jurisdiction over disputes arising under the PLA. The dispute resolution provisions[4] of the PLA

---

[4] By referring to "dispute resolution provisions," the Court is referring to Sections 5.1 and 5.2 of

provide that: "In the event of a dispute arising under [the PLA]," the terms of the PLA require that the parties first attempt to negotiate the dispute. PLA § 5.1. InterDigital sought to do that here (ECF No. 10-10), and Pegatron refused (ECF No. 10-11). If negotiation fails, the dispute resolution provisions of the PLA further provide that either party may then choose to submit the dispute to binding arbitration. *Id.* § 5.2. Again, InterDigital sought to do that here. ECF No. 10-12.

Further, the forum selection clause[5] of the PLA provides that the parties have "irrevocably consent[ed] to exclusive jurisdiction and venue of the state and federal courts in the San Jose Division of the United States District Court for the Northern District of California." *Id.* § 6.10. Although the governing law provision contained within § 6.10 expressly provides that disputes about the "validity and interpretation" of the PLA are governed by Delaware law, the forum selection clause is not expressly limited to disputes about the "validity and interpretation" of the PLA. *See id.* Instead, the forum selection clause vests the federal and state courts in San Jose, California with "exclusive jurisdiction" over the parties. Nor is the forum selection clause expressly limited to disputes arising under the PLA, unlike the dispute resolution provisions. Compare PLA §§ 5.1, 5.2 with § 6.10. The Court does not, and need not, decide the outer bounds of the parties' forum selection clause at this juncture because the Court's determination that the Taiwan Action "arises under" the PLA and concerns the validity and interpretation of the PLA sufficiently resolves the issue of whether the Taiwan Action was filed in violation of the dispute resolution and forum selection provisions of the PLA.

Moreover, the governing law provision[6] of the PLA provides that "[t]he validity and interpretation of [the PLA] shall be governed by Delaware law." PLA § 6.10. Here, as was the

---

the PLA.
[5] The forum selection clause of the PLA is contained within section 6.10 and provides: "The Parties irrevocably consent to exclusive jurisdiction and venue of the state and federal courts in the San Jose Division of the United States District Court for the Northern District of California." PLA § 6.10.
[6] The governing law provision of the PLA is contained within section 6.10 and provides: "The validity and interpretation of this Agreement shall be governed by Delaware law, without regard to conflict of laws principles." PLA § 6.10.

case with the Andina's foreign claims in *Gallo*, it is not clear that Pegatron even has claims under Taiwanese law, because the contract contains a choice-of-law clause in favor of Delaware. *See Gallo*, 446 F.3d at 991. If Pegatron does have such claims, however, either an arbitration panel or a court in San Jose is capable of applying Taiwanese law to Pegatron's claims. *See id.* Accordingly, the issues before the Taiwan Court and this Court are the same, and the parties have agreed to the exclusive jurisdiction of state and federal courts in San Jose.

### c. Pegatron's remaining arguments

Pegatron offers two remaining arguments as to why the issues in the Taiwan Action are not similar to those in the instant action: (1) the term "arising under" in the arbitration provision of the PLA should be construed narrowly, and (2) the dispute resolution and forum selection provisions were drafted by, and should be construed against, InterDigital. Each is addressed in turn.

Pegatron's first argument is that the language "arising under" in the dispute resolution provisions of the PLA should be construed pursuant to federal law, which construes this term narrowly. ECF No. 33 at 8-9 (citing *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983), and *Tracer Research Corp. v. Nat'l Environmental Servs. Corp.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). The authority relied upon by Pegatron provides that the scope of mandatory arbitration provisions are governed by federal law, even if the remainder of the contract is governed by state law. When so construed, argues Pegatron, its claims under Taiwanese law are not claims "arising under" the PLA and therefore are not subject to mandatory arbitration. InterDigital responds that the interpretation of the PLA is governed by Delaware law, which gives "arising under" a broad scope. ECF No. 34 at 2-3 (citing *BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 21, 23 (Del. Ch. 2007) (finding "arising under" language to be "broadly worded")). The Court agrees with InterDigital for the reasons explained below.

Even if Pegatron were correct[7] that "arising under" should be construed narrowly for

---

[7] The Federal Arbitration Act "creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary." *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1119 (N.D. Cal. 2014) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-79 (1989). Less

11
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

purposes of the arbitration provision, it would not change this Court's conclusion that the forum selection clause, independently, vests this Court with "exclusive jurisdiction" over the parties' dispute, and as such, warrants an anti-suit injunction in this case. First, Pegatron's cited authorities only hold that federal law governs the interpretation of the scope of arbitration provisions. *See Tracer*, 42 F.3d at 1295; *Mediterranean*, 708 F.2d at 1464. Pegatron's cited authorities do not address forum selection clauses. Moreover, Pegatron's argument ignores the fact that the PLA's governing law provision expressly provides that the validity and interpretation of the PLA, which includes the forum selection clause, shall be governed by Delaware law. *See* PLA § 6.10. The validity and interpretation of the PLA is exactly what Pegatron seeks to challenge in the Taiwan Action. *See* Taiwan Action. Thus, Pegatron may not have claims under Taiwanese antitrust law in light of the PLA's Delaware governing law provision. *See* PLA § 6.10. Finally, even if federal law interprets "arising under" narrowly, that term appears nowhere in the forum selection clause. *Id.* The forum selection clause is not limited to disputes "arising under" the PLA and broadly vests courts in San Jose with "exclusive jurisdiction" over the parties. *See id.*

Pegatron's second argument is that InterDigital drafted the dispute resolution provisions and that Pegatron did not believe these provisions would apply to disputes arising under Taiwanese law. *See* ECF No. 33 at 9. InterDigital responds that the PLA was heavily negotiated, not unilaterally drafted by one side, and that it was Pegatron who insisted that the courts in San Jose, California, rather than Delaware, have exclusive jurisdiction over disputes concerning the

---

clear is whether the interpretation of the arbitration provision is subject to interpretation under state or federal law. "When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation." *Farrow*, 37 F. Supp. 3d at 1119 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). The Court does not, and need not, decide at this juncture whether the Taiwanese claims are subject to mandatory arbitration pursuant to the arbitration provision of the PLA.

12
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

validity and interpretation of the PLA. ECF No. 36 at 4. The Court finds Pegatron's argument unpersuasive. Pegatron was neither forced to license InterDigital's patents, nor was Pegatron required to agree to the terms contained in the PLA. Furthermore, Pegatron insisted that the courts of San Jose, California, not Delaware, have "exclusive jurisdiction" over disputes arising under the agreement. *See* ECF No. 32-6 ¶ 14. That Pegatron was able to negotiate changes in the forum selection clause demonstrates that the PLA was the result of arms-length negotiations and was not a contract of adhesion. Moreover, Pegatron's CEO and President executed the PLA, assenting to the terms contained therein, which included the dispute resolution, governing law, and forum selection provisions. PLA at 17.

### d.     Summary

For the reasons stated above, the Court determines that the Taiwan Action involves a dispute arising under the PLA and, therefore, is subject to the dispute resolution and forum selection provisions vesting this Court with "exclusive jurisdiction" over such disputes. Therefore, the present action is dispositive of the Taiwan Action because all the claims in the Taiwan Action arise out of the PLA, are subject to the dispute resolution and forum selection provisions of the PLA, and therefore must be disposed of in accordance with the terms of the PLA—which does not permit litigating the validity of the PLA under Taiwanese antitrust law in a Taiwanese court. Thus, the first prong of the anti-suit injunction factors has been satisfied, and the Court will now turn to the next factor.

### 2.     Frustration of this forum's policy

The second anti-suit injunction factor is "whether the foreign litigation would frustrate a policy of the forum issuing the injunction." *Applied*, 587 F.3d at 913. The Ninth Circuit has repeatedly stressed the "strong policy favoring robust forum selection clauses." *Id.* at 918-19; *Gallo*, 446 F.3d at 992-93. This is because "[f]orum selection clauses are increasingly used in international business." *Gallo*, 446 F.3d at 992. "When included in freely negotiated commercial contracts, they enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price." *Id.* The primacy of

forum selection clauses requires this Court to enforce such provisions "absent strong reasons to set them aside." *Id.* "Although a foreign court might eventually agree that a forum selection clause controls, there is no guarantee that such a resolution would be reached in a timely fashion or at all, and this uncertainty would impair the parties' ability to enforce a forum selection clause." *Applied*, 587 F.3d at 919. Thus, "[a]nti-suit injunctions may be the only viable way to effectuate valid forum selection clauses." *Id.*

Pegatron argues that the Taiwan Action does not "arise under" the PLA because the Taiwan Action arises under Taiwanese law and therefore is not subject to the dispute resolution, governing law, or forum selection provisions of the PLA. ECF No. 33 at 11-12. The Ninth Circuit has previously rejected similar arguments. For example, in *Applied,* Surgical "argue[d] that the Belgian action does not frustrate California policy to enforce forum selection clauses because the Belgian claims arise out of the Belgian Act, not out of the Agreement, and therefore are not subject to the Agreement's forum selection clause." 587 F.3d at 919. As explained above, however, this Court has determined that Pegatron's Taiwan Action arises under the PLA. Accordingly, here, as in *Applied*, "[a]ny continuation of the [foreign] action denigrates the integrity of the parties' prior written commitment that disputes concerning the Agreement would be litigated in California." *Id.* at 919. Accordingly, the Court concludes that this forum's strong policy in favor of enforcing forum selection clauses would be frustrated absent an anti-suit injunction.

### 3. Impact on comity

The third, and final, anti-suit injunction factor requires "determining 'whether the impact on comity would be tolerable.'" *Id.* at 919 (quoting *Gallo*, 446 F.3d at 994).

The Court determines that an anti-suit injunction in the instant case would not have an intolerable impact on comity. In the instant case, there is no public international issue raised in this case. The Taiwan Action is a civil action between two private parties, Pegatron and InterDigital, involving a dispute concerning their obligations arising under their private agreement. The facts of this case are analogous with the facts in *Gallo* and *Applied*. "[W]here there is no

14

public international issue raised, a foreign government is not involved in the litigation, and the litigation involves private parties concerning disputes arising out of a contract, not only would an anti-suit injunction not have an intolerable impact on comity, but allowing foreign suits to proceed in such circumstances would seriously *harm* international comity." *Applied*, 587 F.3d at 921 (citing *Gallo*, 446 F.3d at 994). Here, as in *Gallo* and *Applied*, an anti-suit injunction would not have an intolerable impact on comity.

### B. Remaining Preliminary Injunction Factors

The law in the Ninth Circuit is unclear whether a movant seeking an anti-suit injunction must only establish the presence of the three anti-suit injunction factors addressed above, or whether the movant must also establish the remaining traditional factors for a preliminary injunction. For example, in each of the Ninth Circuit's recent anti-suit injunction decisions, the Ninth Circuit *only* addressed the three anti-suit injunction factors. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012); *Applied*, 587 F.3d at 913; *Gallo*, 446 F.3d at 990-91. In each, upon finding that the anti-suit injunction factors were satisfied, the Ninth Circuit either affirmed an anti-suit injunction or reversed the denial of an anti-suit injunction without addressing any of the remaining preliminary injunction factors. *See Microsoft*, 696 F.3d at 889 (affirming issuance of anti-suit injunction); *Applied*, 587 F.3d at 921 (holding that the anti-suit injunction factors were met and reversing and remanding to the district court "to order an anti-suit injunction"); *Gallo*, 446 F.3d at 990-91 (holding that anti-suit injunction factors were met and reversing and remanding "to the district court with instructions to enter a preliminary injunction barring Andina from proceeding with litigation in Ecuador"). This Court is not the only court to recognize the uncertainty in the Ninth Circuit's case law. *See, e.g.*, *Zynga, Inc. v. Vostu USA, Inc.*, 816 F. Supp. 2d 824, 828 n.4 (N.D. Cal. 2011) ("It is arguably unclear from the Ninth Circuit case law whether the three anti-suit injunction factors replace all four *Winter* preliminary injunction factors, or whether they replace only the requirement that the movant show a likelihood of success on the underlying claim."). Moreover, courts in this district have imposed anti-suit injunctions without finding the remaining *Winter* factors to have been satisfied. *See, e.g., Gilbane*

*Federal v. United Infrastructure Projects FZCO*, No. 14-CV-3254-VC, 2014 WL 4950011 (N.D. Cal. Sept. 24, 2014); *Oracle Am., Inc. v. Myriad Grp. AG*, No. 10-CV-5604-SBA, 2012 WL 146364 (N.D. Cal. Jan. 17, 2012). Regardless, in the instant case, the remaining preliminary injunction factors weigh in favor of an anti-suit injunction. Each is addressed in turn.

### 1. Irreparable harm

InterDigital argues that it will be irreparably harmed if forced to litigate the Taiwan Action because InterDigital will be (a) foreclosed from enforcing its contractual rights, (b) saddled with legal fees and potential damage to its reputation, and (c) forced to quickly litigate the Taiwan Action based on Pegatron's refusal to permit reasonable extension requests. ECF No. 13 at 14-15; ECF No. 36 at 1-2. Pegatron responds that economic injuries, such as legal fees, are not traditionally considered irreparable and that InterDigital's conclusory allegation that it "may" suffer reputational damages is also insufficient to establish irreparable harm. ECF No. 33 at 14-15. The Court agrees with InterDigital, for the reasons explained below.

The Court is persuaded that InterDigital would be irreparably harmed if foreclosed from enforcing a valid forum selection clause and that there is an absence of a legal remedy for such harm. As the Ninth Circuit has held: "Anti-suit injunctions *may be the only viable way* to effectuate valid forum selection clauses." *Applied*, 587 F.3d at 919 (emphasis added). This is because "[a]lthough a forum court might eventually agree that a forum selection clause controls, there is no guarantee that such a resolution would be reached in a timely fashion or at all, and this uncertainty would impair the parties' ability to enforce a forum selection clause." *Id.* Were this Court to conclude otherwise, cautioned the Ninth Circuit, "[t]he potential implications for international commerce are considerable." *Id.* (quoting *Gallo*, 446 F.3d at 992). Similarly, "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship.'" *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981) (quoting *In re Unterweser Reederei Gmbh*, 428 F.2d 888, 896 (5th Cir. 1970)). Because the Court concludes that the inability to enforce a valid forum selection clause constitutes irreparable harm in this case, the Court need not consider whether

InterDigital's other alleged harms, independently, constitute irreparable harm sufficient to warrant the issuance of a preliminary injunction.

### 2. Balance of the equities

The balance of the equities weighs in favor of InterDigital, and accordingly, in favor of an anti-suit injunction. In 2008, InterDigital negotiated and entered into a contract with Pegatron. *See generally* PLA. This contract imposed obligations upon the parties including the licensing of patents and the payments of royalties. *Id.* at §§ 2.1, 3.1. For disputes arising under the agreement, the parties expressly agreed to submit disputes arising under the agreement first to mandatory negotiation, then optional arbitration, and finally to the "exclusive jurisdiction" of the state and federal courts in San Jose, California. *Id.* at § 6.10. The parties further agreed that Delaware law shall be the "governing law" of the contract. *Id.*

Fast-forward seven years, to 2015, and Pegatron files suit in Taiwan arguing that, under Taiwanese antitrust law, the terms of the PLA (to which Pegatron voluntarily agreed in 2008) are invalid and unenforceable, and that Pegatron is entitled to recover damages from InterDigital. *See generally* Taiwan Action. Further, Pegatron waits until May 26, 2015 to serve the Taiwanese complaint on InterDigital, even though the complaint was filed in February 2015 and a preliminary hearing was set for June 9, 2015. ECF No. 10-13 ¶¶ 24, 25. When InterDigital sought to negotiate the dispute with Pegatron, pursuant to the terms of the PLA, Pegatron refused and insisted on proceeding in the Taiwan Action, notwithstanding the provisions of the PLA requiring mandatory negotiation and vesting the San Jose courts with exclusive jurisdiction over the PLA. ECF Nos. 10-10, 10-11, 10-13 ¶ 27; PLA §§ 5.1, 5.2, 6.10.

Moreover, were the Court to impose an anti-suit injunction it would not work any hardship on Pegatron. Taiwanese law would allow Pegatron to seek a dismissal of the Taiwan Action without prejudice. See ECF No. 36-1 at ¶¶ 8-9. Therefore, Pegatron would not be required to simply default and accept an adverse determination on the merits in Taiwanese court. *See id.*

In sum, the balance of the equities weighs in InterDigital's favor, and the Court will now address the public interest factor.

17
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### 3. Public interest

When an injunction will impact non-parties and has the potential to impact the public, the public interest is relevant. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). By contrast, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Id.* at 1138–39 (quoting *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)) (internal quotations marks and brackets omitted). The Court finds that, under the circumstances presented, the reach of the injunction is narrow and limited to the parties. Therefore, the public interest is at most a neutral factor.

### 4. Summary

For the reasons explained above, InterDigital has satisfied its burden to establish the three *Gallo* factors for an anti-suit injunction. The Court further determines that the remaining *Winter* factors support preliminary injunctive relief in this case.

## C. Relief

Having determined that an anti-suit injunction is warranted in this case, the Court will now address the proper remedy.

### 1. Temporary Restraining Order vs. Preliminary Injunction

InterDigital originally sought an *ex parte* temporary restraining order and an order to show cause why a preliminary injunction should not issue. *See* ECF No. 12. Applications for a temporary restraining order may be issued without notice to the opposing party. *See* Fed. R. Civ. P. 65(b)(1). Because InterDigital filed its application on June 11, 2015, and the first hearing in the Taiwan Action is scheduled for July 7, 2015, the Court declined to issue an *ex parte* TRO without providing notice to Pegatron and instead allowed Pegatron an opportunity to respond. ECF No. 27. Accordingly, the Court set a briefing schedule and set the matter for hearing on June 30, 2015. *Id.*

When an adverse party has been served with an application for a temporary restraining

18
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

order, and has been provided an opportunity to respond, this Court has discretion to treat the motion for temporary restraining order as a motion for a preliminary injunction. "When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." *See, e.g.*, Wright & Miller, *Federal Practice and Procedure* § 2951 (3d ed.). "[I]t is appropriate to treat a non-ex parte motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction." *Klinke v. Bannister*, No. 12-CV-00032, 2013 WL 6120437, at *4 (D. Nev. Nov. 20, 2013). This is because the standards for a temporary restraining order mirror that for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

In the instant case, the Court exercises its discretion to conclude that a preliminary injunction, as opposed to a temporary restraining order followed by additional briefing regarding the propriety of a preliminary injunction, is the proper course. Further factual development is unnecessary. The Court has before it the PLA, the Taiwan Action, and the parties' arguments regarding each of the preliminary injunction factors. Accordingly, the Court will grant a preliminary anit-suit injunction.

### 2. Bond

The Court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c). Notwithstanding the seemingly mandatory language, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

Pegatron argues, in a footnote, that "Pegatron would be damaged as a result of a TRO" and that InterDigital should be required to give security "in an amount that the court considers proper to pay the costs and damages sustained by Pegatron if the TRO is later found to have wrongly

issued." ECF No. 33 at 16 n.9. However, Pegatron has identified no harm it will suffer as a result of a TRO, and has neither quantified nor articulated any damages. The Court is not convinced that any damages exist for the following two reasons. First, as explained above, the governing law provision in the PLA casts doubt on whether Pegatron has any rights under Taiwanese law regarding the validity of the PLA. Second, if the Court were to order Pegatron to dismiss the Taiwan Action, Pegatron may seek a voluntary dismissal that will have no res judicata effect. *See* ECF No. 36-1. Even if this Court's order granting a preliminary anti-suit injunction was later reversed, Pegatron has identified no negative consequences to its ability to reinstitute its Taiwan Action. Accordingly, the Court finds there is no likelihood of harm to Pegatron should the preliminary injunction be later found to have issued in error. Thus, the Court will not impose a bond.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' motion for an anti-suit injunction is GRANTED pursuant to Federal Rule of Civil Procedure 65. It is hereby ORDERED that Pegatron shall:

1. immediately take steps to dismiss the Taiwan Action;
2. provide Plaintiffs with written notice of each step taken to carry out this order, as well as notice of any action taken by the court in Taiwan, within twenty-four hours of such steps or notice; and
3. not, directly or indirectly, initiate any other action or proceeding that arises under the parties' PLA, except those permitted by Sections 5.1, 5.2, and 6.10 of the PLA.

**IT IS SO ORDERED.**

Dated: June 29, 2015

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

20
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION