1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| INTERDIGITAL TECHNOLOGY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PEGATRON CORPORATION, <br><br> Defendant. | Case No. 15-CV-02584-LHK <br><br> **ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. No. 59 |

Before the Court is a motion to compel arbitration filed by Plaintiffs InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital, Inc. (collectively, "Plaintiffs" or "InterDigital").  ECF No. 57 ("Motion").  InterDigital requests that the Court compel arbitration of the counter claims brought by Defendant Pegatron Corporation ("Pegatron") against InterDigital and either dismiss Pegatron's counterclaims or stay proceedings on Pegatron's counterclaims pending completion of the arbitration.  *See* Motion.  Having considered the submissions of the parties, the record in this case, and the relevant law, the Court hereby GRANTS InterDigital's Motion, for the reasons stated below.

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

# I.   BACKGROUND

## A.   Factual Background

Plaintiff InterDigital, Inc. is a Pennsylvania corporation having its principal place of business in Delaware.  ECF No. 1 ("Compl.") ¶ 7.  Plaintiffs InterDigital Technology Corporation and IPR Licensing, Inc. are both Delaware corporations having their principal place of business in Delaware, and each is a subsidiary of Plaintiff InterDigital, Inc.  *Id.* ¶¶ 5-6; *id.*at 2 n.4.  InterDigital contends it "develops fundamental wireless technologies that are at the core of mobile devices, networks, and services worldwide."  *Id.* ¶ 1.

Defendant Pegatron is an electronics company based in Taipei, Taiwan "manufactures various wireless communication devices, including certain smartphones for Apple, Inc., such as the iPhone 6."  ECF No. 52 ("Answer") ¶ 8.

### 1.   InterDigital's Standard Essential Patents

InterDigital owns numerous patents, known as Standard Essential Patents ("SEPs") that are necessary for implementing wireless and cellular technology standards established by various standard setting organizations ("SSOs"), including the European Telecommunications Standardization Institute ("ETSI"), the Institute of Electrical and Electronics Engineers ("IEEE"), and the International Telecommunications Union ("ITU").  ECF No. 52 ("Counterclaims") ¶¶ 2, 4; Motion at 3.  In exchange for the SSOs incorporating InterDigital's SEPs into wireless and cellular technology standards, InterDigital committed to the SSOs that InterDigital would license its SEPs "on fair, reasonable, and non-discriminatory ("FRAND") terms to anyone who desired a license."  Counterclaims ¶ 4.

### 2.   Patent License Agreement

In 2008, InterDigital entered into a license agreement for InterDigital's SEPs with Pegatron's then-parent corporation ASUSTeK Computer Inc. ("ASUSTeK").  Counterclaims ¶ 3; *see InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 11, 2015), ECF No. 17 at 1 (noting that ASUSTek was Pegatron's parent company in 2008).  Towards the end of InterDigital's license negotiations with ASUSTeK, Pegatron spun off from ASUSTeK.

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

Counterclaims ¶ 3.  Around the same time in 2008 that ASUSTek and InterDigital entered a license agreement, InterDigital and Pegatron also signed a Patent License Agreement ("PLA"). *Id.*; ECF No. 10-2.  Pursuant to the terms of the PLA, InterDigital granted Pegatron a worldwide license to a large portfolio of patents relating to wireless telecommunications technology.  *See* ECF No. 10-2.  The Vice President of InterDigital, Mr. Donald Boles, signed the agreement on behalf of the InterDigital entities on April 18, 2008.  *Id.* at 17.  The CEO and President of Pegatron, Mr. Jason Cheng, signed the agreement on behalf of Pegatron on April 30, 2008.  *Id.*

The PLA contained two provisions relevant to the instant dispute: (1) a dispute resolution provision, and (2) a governing law and venue provision.  Each is addressed in turn.

### a.      Dispute Resolution

Article VI of the PLA is titled "Dispute Resolution" and contains sections 5.1 and 5.2, which outline dispute resolution procedures for disputes arising under the PLA.  Specifically, in the event of "a dispute arising under this Agreement," senior-level executives of each party shall meet in Wilmington, Delaware or another location to which the parties agree within sixty days after receiving written notice of the dispute.  PLA at § 5.1.  The parties are then to enter into "good faith" negotiations aimed at resolving the dispute.  *Id.*  If the parties are unable to resolve the dispute in a mutually satisfactory manner within sixty days following the meeting, then either party may submit the dispute to arbitration.  *Id.*  Under the arbitration provision, the arbitration is to occur in Washington, D.C., in English, before a panel of three arbitrators.  *Id.* § 5.2.  The parties have submitted prior disputes to arbitration pursuant to these provisions.  *See, e.g.*, *InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 24, 2013), ECF No. 9 (order confirming Arbitration Award in favor of InterDigital).  The dispute resolution provisions in Article VI of the PLA are identical to those contained in InterDigital's license with ASUSTek. *Compare* ECF No. 10-2, *with ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716-BLF, ECF No. 2-2.

### b.      Governing Law and Venue

Section 6.10 of the PLA, titled "Governing Law/Venue," also provides that "[t]he validity

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

and interpretation of this Agreement shall be governed by Delaware law, without regard to conflict of laws principles." PLA § 6.10. The section further provides that "[t]he Parties irrevocably consent to exclusive jurisdiction and venue of the state and federal courts in the San Jose Division of the United States District Court for the Northern District of California." *Id.* The governing law and venue provisions in Section 6.10 of the PLA are identical to those contained in InterDigital's license with ASUSTek. *Compare* ECF No. 10-2, *with ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716-BLF, ECF No. 2-2.

### 3.    Taiwan Proceedings

On February 3, 2015, Pegatron filed a lawsuit against InterDigital in Taiwan Intellectual Property Court. *Pegatron Corp. v. InterDigital Tech. Corp.*, 104-Min-Pu-Tze-No. 17. *See, e.g.*, ECF No. 10-6 ("Taiwan Action"). In the Taiwan Action, Pegatron alleged that the royalty rates and terms of the PLA violate the Taiwan Fair Trade Act. Specifically, Pegatron alleged that certain terms of the PLA were unlawful under Taiwanese law and identified the following obligations pursuant to the PLA as unlawful:

> [InterDigital] granting a license to Pegatron but refusing to even provide a full list of the Licensed Patents; and even if the Licensed Patents include the standard essential patents, as claimed by the defendants, the validity of such patents is doubtful, but [InterDigital] restricted Pegatron from challenging the patents' validity; there is no way to distinguish the standard essential patents from the non-standard essential patents; the scope and term of the Licensed Patents are unclear; [InterDigital] licensed standard essential patents with non-standard essential patents, which involving [sic] mandatory package licensing; [InterDigital] deprived Pegatron its basic right to terminate the PLA and to seek a reasonable legal remedy; and [InterDigital] refused to provide transparent transaction information.

Taiwan Action at 4. For relief, Pegatron sought to enjoin InterDigital from enforcing the terms of the PLA and, additionally, sought damages in excess of $52 million. *Id.* at 1.

On May 26, 2015, InterDigital was served with a copy of the Complaint in the Taiwan Action. ECF No. 10-13 ¶ 24. At that time, InterDigital first became aware that the Taiwan Court had already scheduled a hearing for the Taiwan Action two weeks later, on June 9, 2015. *Id.* ¶ 25. On the evening of May 26, InterDigital called the Taiwan Court, seeking an extension of the June

9 hearing.  *Id.*  The Taiwan Court agreed to reschedule the hearing from June 9, 2015 to July 7, 2015, even though InterDigital sought a longer extension.

The next day, on May 27, 2015, InterDigital sent a letter to Pegatron providing a Notice of Dispute under the PLA, demanding that Pegatron withdraw the Taiwan Action and initiate the senior-level meetings required pursuant to the dispute resolution provisions in the PLA.  *Id.* ¶ 26. On June 1, 2015, Pegatron responded by refusing to withdraw the Taiwan Action and refusing to engage in the protocol for dispute resolution outlined in the PLA.  *Id.* ¶ 27.  On June 5, 2015, InterDigital filed a demand for arbitration pursuant to the procedures outlined in the PLA.  *Id.* ¶ 28.

### B.    Procedural History

On June 10, 2015, InterDigital filed its Complaint in the instant action.  Compl.  The gravamen of InterDigital's Complaint is that Pegatron's filing of the Taiwan Action constitutes a breach of the PLA.  *See id.*  For relief, InterDigital seeks (1) an anti-suit injunction, enjoining Pegatron from prosecuting the Taiwan Action, (2) specific performance requiring Pegatron to comply with the dispute resolution procedures outlined in the PLA, and (3) an order compelling arbitration of the parties' dispute pursuant to the provisions outlined in the PLA.  *See id.*

On June 11, 2015, InterDigital filed a motion seeking a temporary restraining order and the issuance of a preliminary anti-suit injunction, enjoining Pegatron from further prosecution of the Taiwan Action.  ECF No. 12.  Also on June 11, 2015, InterDigital filed an administrative motion to relate the instant case with either (a) the prior proceeding in this district before Judge Davila that had confirmed the award from the parties' prior arbitration, or (b) a pending proceeding in this district before Judge Freeman where ASUS and ASUSTek sued InterDigital over InterDigital's nearly identical license agreement with ASUSTek.  *See InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 11, 2015), ECF No. 17.  On June 15, 2015, Judge Davila denied InterDigital's motion to relate the instant case to the case over which he previously presided.  *See InterDigital Tech. Corp. v. Pegatron Corp.*, No. 13-MC-80087-EJD (N.D. Cal. June 15, 2015), ECF No. 19.  Later that day, Judge Freeman also denied InterDigital's motion to relate

United States District Court
Northern District of California

1  the instant case to the case pending before her and involving a similar dispute between ASUS,

2  ASUSTek, and InterDigital. *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-1716-BLF

3  (N.D. Cal. June 15, 2015), ECF No. 43.  Accordingly, on June 15, 2015, this Court set a briefing

4  schedule for motion for a temporary restraining order and preliminary injunction.  ECF No. 27.

5  On June 22, 2015, Pegatron filed an opposition (ECF No. 33), and on June 24, 2015, InterDigital

6  filed a reply (ECF No. 36).  On June 29, 2015, the Court granted InterDigital's motion for a

7  preliminary injunction.  ECF No. 39.

8          Pegatron filed an Answer and Counterclaims on August 3, 2015.  ECF No. 52.  Pegatron

9  asserts twelve causes of action: (1) Violation of Section Two of the Sherman Act; (2) Abuse of

10  Dominance in Violation of Article 10 of the Taiwan Fair Trade Act; (3) Unfair Trade Practices in

11  Violation of Article 19 of the Taiwan Fair Trade Act; (4) Deceptive or Obviously Unfair Conduct

12  in Violation of Article 24 of the Taiwan Fair Trade Act; (5) Breach of ETSI Contracts; (6) Breach

13  of IEEE Contracts; (7) Breach of ITU Contracts; (8) Promissory Estoppel – Pled in the

14  Alternative; (9) Violation of Section 17200 of California Business & Professions Code; (10)

15  Violation of the Delaware Consumer Fraud Act; (11) Declaration Regarding the Appropriate

16  FRAND Terms and Conditions; and (12) Declaratory Judgment of Unenforceability for Patent

17  Misuse.  *See* Counterclaims.

18          InterDigital filed the instant Motion to compel arbitration of Pegatron's counterclaims on

19  September 24, 2015.  ECF No. 57 (corrections filed as ECF No. 59).  Pegatron filed a response on

20  October 22, 2015.  ECF No. 66.  InterDigital filed a reply on November 12, 2015.  ECF No. 69

21  **II.     LEGAL STANDARD**

22          The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract

23  affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001)

24  (quoting 9 U.S.C. § 2).  Under Section 3 of the FAA, "a party may apply to a federal court for a

25  stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing

26  for such arbitration.'"  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C.

27  § 3).  If all claims in litigation are subject to a valid arbitration agreement, a federal court has

28

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

1   discretion to dismiss or stay the case.  *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp.

2   3d 851, 861-62 (N.D. Cal. Apr. 24, 2015).

3          "For any arbitration agreement within the coverage of the FAA, the court is to make the

4   arbitrability determination by applying the federal substantive law of arbitrability, absent clear and

5   unmistakable evidence that the parties agreed to apply non-federal arbitrability law."  *Brennan v.*

6   *Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (citations and brackets omitted).  In deciding

7   whether a dispute is arbitrable, a federal court must answer two questions: (1) whether the parties

8   agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the

9   claims at issue.  *See id.* at 1130; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d

10  1126, 1130 (9th Cir. 2000).  If the party seeking to compel arbitration establishes both factors, the

11  court must compel arbitration.  *Id.*  "The standard for demonstrating arbitrability is not a high one;

12  in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is

13  phrased in mandatory terms."  *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir.

14  1991).

15         Additionally, in cases where the parties "clearly and unmistakably intend to delegate the

16  power to decide arbitrability to an arbitrator," the Court's inquiry is "limited . . . [to] whether the

17  assertion of arbitrability is 'wholly groundless.'"  *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366,

18  1371 (Fed. Cir. 2006) (applying Ninth Circuit law).  Nonetheless, "arbitration is a matter of

19  contract and a party cannot be required to submit to arbitration any dispute which he has not

20  agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)

21  (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

22         The FAA creates a body of federal substantive law of arbitrability that requires a healthy

23  regard for the federal policy favoring arbitration and preempts state law to the contrary.  *Volt Info.*

24  *Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989); *Ticknor v.*

25  *Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001).  State law is not entirely displaced

26  from the federal arbitration analysis, however.  *See Ticknor*, 265 F.3d at 936–37.  When deciding

27  whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law

28

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Parties may also contract to arbitrate according to state rules, so long as those rules do not offend the federal policy favoring arbitration. *Volt*, 489 U.S. at 478–79. Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If a contract contains an arbitration clause, there is a presumption of arbitrability, *AT&T*, 475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## III.    DISCUSSION

### A.    The PLA Delegates Arbitrability to an Arbitrator

The parties agree that the arbitration agreement in the PLA is within the coverage of the FAA, and Pegatron does not dispute InterDigital's contention that the PLA contains a valid and mandatory arbitration provision. *See* ECF Nos. 59, 66. Although the parties dispute whether Delaware law applies to interpret the scope of the arbitration clause in the PLA, both parties apply federal law to analyze whether the parties intended to delegate arbitrability to an arbitrator. *See* ECF Nos. 59, 66, 69.

The parties dispute whether, applying federal law, the PLA clearly and unmistakably delegates questions of arbitrability to an arbitrator. InterDigital argues that the PLA's incorporation of the American Arbitration Association ("AAA") rules for arbitration is clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator. ECF No. 59 at 9-10. Pegatron argues that the incorporation of the AAA rules is not clear and unmistakable evidence of an intent to delegate arbitrability to an arbitrator for three reasons: (1) the parties

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

1  consented to the "exclusive jurisdiction" of the courts of the Northern District of California, San

2  Jose Division (PLA § 6.10); (2) the PLA includes several exceptions to the AAA rules; and (3) the

3  PLA's arbitration agreement read as a whole does not delegate arbitrability to an arbitrator.  ECF

4  No. 66 at 12-14.

5          In *Brennan*, the Ninth Circuit held that, at least in commercial contracts between

6  sophisticated parties, incorporation of the AAA rules into an arbitration agreement is clear and

7  unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator.  796 F.3d at

8  1130-31.  The PLA in the instant case is a commercial license agreement between two

9  corporations, one a developer of wireless technologies and the other a manufacturer of wireless

10  communication devices.  *See* Compl.; Answer.  Pegatron does not dispute that the PLA is

11  accordingly a commercial contract between sophisticated parties.  *See* ECF No. 66.  Therefore,

12  under binding Ninth Circuit precedent, incorporation of the AAA rules into the PLA is clear and

13  unmistakable evidence that the parties in the instant case intended to delegate arbitrability to an

14  arbitrator.  *See Brennan* 796 F.3d at 1130-31 (incorporation of AAA rules in a commercial

15  contract between sophisticated parties is clear and unmistakable evidence of the intent to delegate

16  arbitrability to an arbitrator).

17          The Court is not persuaded by Pegatron's arguments that *Brennan* does not apply to the

18  instant case.  The fact that the parties consented to the exclusive jurisdiction of the courts of the

19  Northern District of California, San Jose Division does not alter the Court's conclusion that the

20  parties intended to delegate arbitrability to an arbitrator.  As Pegatron concedes, the parties

21  intended to submit certain disputes to arbitration, notwithstanding the parties' consent to submit

22  all other disputes to the Northern District of California.  *See* ECF No. 66 at 12.  Because the

23  parties agreed to submit certain disputes to arbitration, the fact that the parties also consented to

24  the exclusive jurisdiction of the courts of the Northern District of California, San Jose Division

25  does not resolve whether arbitrability is one of the issues to be submitted to an arbitrator under the

26  terms of the PLA.  The PLA's specific carve-outs do not relate to arbitrability, and the PLA

27  incorporated all of the AAA rules regarding arbitrability.  *See* ECF No. 10-2 (the PLA).

28

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    Accordingly, the Court concludes that, under *Brennan*, the parties intended to delegate

2    arbitrability to an arbitrator.  *See Brennan*, 796 F.3d at 1130-31 (incorporation of the AAA rules is

3    clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator).

4         Additionally, Pegatron's argument that the PLA's arbitration read as a whole does not

5    delegate arbitrability to an arbitrator relies exclusively upon non-binding authority that predates

6    and contradicts *Brennan* by holding that incorporation of the AAA rules does *not* constitute clear

7    and unmistakable evidence of an intent to delegate arbitrability to an arbitrator.  *See* ECF No. 66 at

8    14 (citing *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2012 WL 412003 (N.D. Cal. Sept.

9    19, 2012) (holding, prior to *Brennan*, that incorporation of the AAA rules did not constitute clear

10   and unmistakable evidence of an intent to delegate arbitrability to an arbitrator); *Moody v. Metal*

11   *Supermarket Franchising Am., Inc.*, No. 13-CV-5098-PJH, 2014 WL 988811 (N.D. Cal. Mar. 10,

12   2014 (holding, prior to *Brennan*, that incorporation of the AAA rules did not constitute clear and

13   unmistakable evidence of an intent to delegate arbitrability to an arbitrator)).  Contrary to the cases

14   cited by Pegatron, under the binding Ninth Circuit precedent of *Brennan*, incorporation of the

15   AAA rules is clear and unmistakable evidence of the parties' intent to delegate arbitrability to an

16   arbitrator.  *Brennan*, 796 F.3d at 1130-31.

17        Furthermore, this Court's conclusion that the PLA clearly and unmistakably delegates

18   arbitrability to an arbitrator is consistent with how Judge Freeman has interpreted identical

19   provisions of InterDigital's license agreement with Pegatron's former parent corporation

20   ASUSTek, which were negotiated at the same time as the PLA in the instant case.  *See*

21   Counterclaims ¶ 3 (discussing the timing of Pegatron's split from ASUSTek and the license

22   agreements between InterDigital, Pegatron, and ASUSTek).  Judge Freeman held that in the

23   context of the same arbitration agreement and choice of law clause at issue in the instant case, the

24   incorporation of AAA rules was sufficient evidence of a clear and unmistakable intent to delegate

25   arbitrability to an arbitrator.  *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716-BLF,

26   2015 WL 5186462, at *4-5 (N.D. Cal. Aug. 25, 2015) (quoting *Brennan*, 796 F.3d at 1129).

27        Therefore, the Court concludes that by incorporating the AAA rules, the parties clearly and

28
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1  unmistakably intended to delegate arbitrability to an arbitrator.  Accordingly, the Court's inquiry

2  is limited to "whether the assertion of arbitrability is 'wholly groundless.'"  *Qualcomm Inc.*, 466

3  F.3d at 1371.

### B.   InterDigital's Claims of Arbitrability Are Not Wholly Groundless

5  Where as here the parties "clearly and unmistakably intend to delegate the power to decide

6  arbitrability to an arbitrator," the Court's inquiry is "limited . . . [to] whether the assertion of

7  arbitrability is 'wholly groundless.'"  *Qualcomm Inc.*, 466 F.3d at 1371.  In so doing:

> [T]he district court should look to the scope of the arbitration clause
> and the precise issues that the moving party asserts are subject to
> arbitration.  Because any inquiry beyond a "wholly groundless" test
> would invade the province of the arbitrator, whose arbitrability
> judgment the parties agreed to abide by in the [PLA], the district
> court need not, and should not, determine whether [Pegatron's
> counterclaims] are in fact arbitrable.  If the assertion of arbitrability
> is not "wholly groundless," the district court should conclude that it
> is "satisfied" pursuant to section 3 [of the FAA].

13  *Id.* at 1374; *see also Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 975 (N.D. Cal. 2015).  If the

14  assertion of arbitrability is not "wholly groundless," the Court should stay proceedings on the

15  potentially arbitrable claims "to permit an arbitrator to rule on the arbitrability of those issues."

16  *Qualcomm Inc.*, 466 F.3d at 1375; *ASUS Computer Int'l*, 2015 WL 5186462, at *6.

### 1.   The Scope of the Arbitration Agreement

18  The Court begins its analysis of InterDigital's assertion that Pegatrons claims are arbitrable

19  by discussing the scope of the PLA's arbitration agreement.  The PLA states in § 6.10 that "[t]he

20  validity and interpretation of this Agreement shall be governed by Delaware law."  ECF No. 10-2.

21  The scope of the PLA's arbitration agreement is a question of interpretation and is therefore

22  governed by Delaware law, not Ninth Circuit law, pursuant to § 6.10.  *See ASUS Computer Int'l*,

23  2015 WL 5186462, at *5 (interpreting an identical choice of law provision to mean that Delaware

24  law applied to determine the scope of an identical arbitration agreement).

25  The PLA's arbitration agreement states that it applies to disputes "arising under" the PLA.

26  PLA § 5.2.  The weight of Delaware case law interprets the term "arising under" broadly.  *See,*

27  *e.g.*, *McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008) (finding "arising under"

28

11

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

language in an arbitration agreement to provide "for arbitration of a wide array of potential claims"); *BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 21, 23 (Del. Ch. 2007) (finding "arising under" language in an arbitration agreement to be "broadly worded"); *West IP Comm'ns, Inc. v. Xactly Corp.*, No. N13C-06-052 DCS, 2014 WL 3032270, at *7 (Del. Super. Ct. June 25, 2014) (finding "arising from" language in an arbitration agreement to be "broad language").

Pegatron nevertheless argues that the term "arising under" as used in the PLA is not entitled to a broad interpretation under Delaware law but should instead be narrowly interpreted. Pegatron cites to one Delaware case, *Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, C.A. No. 8095-VCP, 2013 WL 4509652 (Del. Ch. Aug. 12, 2013), which gave "arising under" a narrow interpretation. The court in *Medicis* was tasked with making the final determination of whether the claims were arbitrable, and the court determined that "arising under" should be given a narrow interpretation in light of the specific enumerated exceptions from arbitration in the underlying contract. *Id.* Unlike the court in *Medicis*, however, this Court is not tasked with determining whether Pegatron's counterclaims are in fact arbitrable. *See Qualcomm, Inc.*, 466 F.3d at 1374. This Court's task is to assess only whether InterDigital's claim of arbitrability is "wholly groundless." *Id.* Given that the weight of Delaware case law interprets "arising under" broadly, InterDigital's assertion that "arising under" in the PLA's arbitration agreement should be interpreted broadly is not "wholly groundless." *See ASUS Computer Int'l*, 2015 WL 5186462, at *5 (holding that the assertion that an identical arbitration agreement was entitled to a broad interpretation under Delaware law was not wholly groundless).

Pegatron additionally argues that "arising under" cannot be given a broad interpretation that encompasses claims brought under non-Delaware law because the PLA requires the arbitrators to apply Delaware substantive law. Specifically, Pegatron cites § 5.2(c) of the PLA, which states that the arbitrators "shall determine the matters at issue in the dispute in accordance with the substantive law of the State of Delaware." According to Pegatron, this language precludes arbitration of any claims that are not based on Delaware substantive law. InterDigital responds that § 5.2(c) provides only that the arbitrators are to assess which claims are arbitrable by

12

United States District Court
Northern District of California

applying Delaware law, not that the arbitrators are limited to arbitrating claims brought pursuant to Delaware law.  In light of the requirement that the Court "resolv[e] ambiguities as to the scope of arbitration in favor of arbitration," *Mundi*, 555 F.3d at 1044 the Court finds that InterDigital's interpretation of § 5.2(c) is not wholly groundless, and therefore InterDigital's assertion that non-Delaware claims can fall within the scope of the arbitration agreement is not wholly groundless. Furthermore, this Court's conclusion is consistent with Judge Freeman's holding in *ASUS Computer Int'l* that InterDigital's assertion that non-Delaware claims fell within the scope of an identical arbitration agreement was not wholly groundless.  2015 WL 5186462, at *5-6.

Finally, Pegatron argues that the scope of the arbitration agreement should be narrowly construed because the arbitration provision prevents the arbitrators from reforming the PLA.  The exclusion of reformation, however, does not apply in the instant case.  In Delaware, contract reformation is available only "on a showing of mutual mistake or, in appropriate cases, unilateral mistake on plaintiff's part coupled with knowing silence on defendant's part."  *Collins v. Burke*, 418 A.2d 999, 1002-03 (Del. 1980).  None of Pegatron's counterclaims allege either mutual or unilateral mistake, and Pegatron does not name reformation among its requested relief.  *See generally* Counterclaims.  Because Pegatron's counterclaims do not implicate reformation of the PLA, the arbitration agreement's exclusion of reformation does not render wholly groundless InterDigital's assertion that the arbitration agreement should be broadly interpreted to cover Pegatron's counterclaims.  *See ASUS Computer Int'l*, 2015 WL 5186462, at *5-6 (finding not wholly groundless InterDigital's assertion that an identical arbitration agreement should be broadly interpreted to cover counterclaims similar to those brought by Pegatron, despite the arbitration agreement's exclusion of cases seeking reformation).

The Court therefore gives "arising under" a broad interpretation for purposes of determining whether InterDigital's assertions that Pegatron's counterclaims "arise under" the PLA are wholly groundless.

**2.    Whether Pegatron's Counterclaims "Arise Under" the PLA**

"After determining the scope of the arbitration clause, the Court is required to examine

13

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

1    each cause of action to determine if the assertion of arbitrability is wholly groundless." *ASUS*

2    *Computer Int'l*, 2015 WL 5186462, at \*5.  Because the Court gives "arising under" a broad

3    interpretation for purposes of InterDigital's instant motion, Pegatron's counterclaims "arise under"

4    the PLA if the counterclaims "involve the [] PLA." *Id.*; *see also CAPROC Manager, Inc. v. The*

5    *Policemen's & Firemen's Ret. Sys. of the City of Pontiac*, No. Civ. A 1059-N, 2005 WL 937613

6    (Del. Ch. Apr. 18, 2005) ("arising under" language in an arbitration agreement covered claims

7    "touch[ing] on" parties' rights and obligations under the agreement).  Thus, the Court must

8    determine whether it is wholly groundless for InterDigital to assert that Pegatron's counterclaims

9    involve the PLA.  The Court addresses each of Pegatron's counterclaims below.

10        Pegatron's first counterclaim alleges a violation of Section 2 of the Sherman Act.

11    Counterclaims ¶¶ 179-94.  Pegatron's allegations that InterDigital violated the Sherman Act are

12    premised upon InterDigital's alleged failure to offer its SEPs to Pegatron on FRAND terms.  *Id.*

13    ¶¶ 186-89 ("IDC has made no good faith effort to license its SEPs on FRAND terms reflecting the

14    value of its contributions, if any, to Pegatron . . . . IDC has discriminated against Pegatron by

15    providing other device manufacturers licensing terms that are much more favorable than those

16    provided to Pegatron . . . . IDC has breached its FRAND commitments by: (1) continuously

17    charging Pegatron royalty rates inconsistent with its FRAND commitments and (2) refusing to

18    offer license terms compliant with FRAND commitments . . . .").  Resolving Pegatron's

19    counterclaim for violation of the Sherman Act will involve assessing whether InterDigital licensed

20    its SEPs to Pegatron on FRAND terms in the PLA.  Accordingly, Pegatron's Sherman Act

21    counterclaim involves the PLA.  Because the Sherman Act counterclaim involves the PLA,

22    InterDigital's assertion that the counterclaim falls within the PLA's arbitration agreement is not

23    wholly groundless.  *See ASUS Computer Int'l*, 2015 WL 5186462, at \*5 (finding not wholly

24    groundless InterDigital's assertion that a Sherman Act claim brought against InterDigital fell

25    within an identical arbitration agreement).

26        The Court addresses Pegatron's second, third, and fourth counterclaims together because

27    the analysis for these three counterclaims is similar.  Pegatron's second, third, and fourth

28    

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

counterclaims allege violations of Article 10, 19, and 24, respectively, of the Taiwan Fair Trade Act.  Counterclaims ¶¶ 195-201(second counterclaim), 202-206 (third counterclaim), 207-215 (fourth counterclaim).  The alleged violation of the Taiwan Fair Trade Act in the second counterclaim is based upon InterDigital's allegedly "intentionally charging Pegatron an unreasonably royalty rate and imposing licensing conditions and royalties in a way that stifled and undermined fair competition in a relevant market."  *Id.* ¶ 200.  The alleged violation of the Taiwan Fair Trade Act in the third counterclaim is based upon InterDigital's "intentionally charging Pegatron an unreasonable royalty rate that significantly exceeds the rate paid by other licensees." *Id.* ¶ 205.  The alleged violation of the Taiwan Fair Trade Act in the fourth counterclaim is that InterDigital "made no good faith effort to license its SEPs on FRAND terms reflecting the value of its contributions, if any, to Pegatron" and "caused Pegatron to remain bound by an anticompetitive license."  *Id.* ¶¶ 212, 214.  As with the Sherman Act counterclaim, resolving the Taiwan Fair Trade Act counterclaims will require assessing whether the PLA provides Pegatron with FRAND license terms for InterDigital's SEPs.  Thus, the Taiwan Fair Trade Act counterclaims all involve the PLA, and InterDigital's assertion that the counterclaims fall within the PLA's arbitration agreement is not wholly groundless.  *See ASUS Computer Int'l*, 2015 WL 5186462, at *5 (finding not wholly groundless InterDigital's assertion that claims involving the relevant contract fell within an identical arbitration agreement).

The Court addresses Pegatron's fifth through eighth counterclaims together because the analysis for these counterclaims is the same.  Pegatron's fifth, sixth, and seventh counterclaims allege breach of InterDigital's contracts with ETSI, IEEE, and ITU, respectively.  Counterclaims ¶¶ 216-222 (fifth counterclaim), 223-230 (sixth counterclaim), 231-237 (seventh counterclaim). Each of these counterclaims alleges that InterDigital failed to offer its SEPs on FRAND terms, as required by InterDigital's contracts with ETSI, IEEE, and ITU.  *Id.*  Pegatron's eighth counterclaim, pled in the alternative, is for promissory estoppel based upon InterDigital's commitments to ETSI, IEEE, and ITU.  *Id.* ¶¶ 238-244.  Although these counterclaims are framed in terms of InterDigital's commitments to ETSI, IEEE, and ITU, Pegatron relies heavily in each

1  counterclaim upon InterDigital's alleged failure to offer FRAND terms to Pegatron as evidence of

2  InterDigital's breach of commitments to ETSI, IEEE, and ITU.  *See id.* ¶¶ 219, 227, 234 ("IDC

3  insists on charging Pegatron unreasonable and unfair royalty rates . . . . IDC further breached these

4  contracts by . . . denying Pegatron the opportunity to negotiate for a license agreement consistent

5  with FRAND terms . . . .").  Thus, resolving Pegatron's counterclaims for breach of contract with

6  ETSI, IEEE, and ITU and counterclaim for promissory estoppel will involve determining whether

7  the PLA represents FRAND terms for InterDigital's SEPs.  These counterclaims therefore involve

8  the PLA, and InterDigital's assertion that these counterclaims fall within the PLA's arbitration

9  agreement is not wholly groundless.  *See ASUS Computer Int'l*, 2015 WL 5186462, at *6 (finding

10  not wholly groundless InterDigital's assertion that claims for violation of commitments to license

11  SEPs on FRAND terms brought against InterDigital fell within an identical arbitration agreement).

12  Pegatron's ninth counterclaim is for violation of California's Unfair Competition Law,

13  Section 17200 of California Business & Professions Code based upon InterDigital's allegedly

14  unlawful conduct as described in Pegatron's preceding counterclaims.  Counterclaims ¶¶ 245-248.

15  As previously discussed, Pegatron's first through eighth counterclaims all involve the PLA, so

16  Pegatron's counterclaim for violation of California's Unfair Competition Law due to the conduct

17  alleged in the first through eighth counterclaims likewise involves the PLA.  Therefore,

18  InterDigital's assertion that Pegatron's counterclaim for violation of California's Unfair

19  Competition Law falls within the arbitration agreement is not wholly groundless.  *See ASUS*

20  *Computer Int'l*, 2015 WL 5186462, at *5 (finding not wholly groundless InterDigital's assertion

21  that a California Unfair Competition Law claim brought against InterDigital fell within an

22  identical arbitration agreement).

23  Pegatron's tenth counterclaim is for violation of the Delaware Consumer Fraud Act.

24  Counterclaims ¶¶ 249-253.  Pegatron's Delaware Consumer Fraud Act counterclaim is based upon

25  InterDigital having allegedly made false promises to SSOs to license its SEPs on FRAND terms

26  and then having "subsequently misled Pegatron by charging Pegatron a non-FRAND rate."  *Id.*

27  ¶¶ 251-52.  Resolving this counterclaim will involve determining whether the PLA represents

28

16

1  FRAND terms for InterDigital's SEPs.  Thus, the Delaware Consumer Fraud Act counterclaim

2  involves the PLA, and InterDigital's assertion that the Delaware Consumer Fraud Act

3  counterclaim falls within the arbitration agreement is not wholly groundless.  *See ASUS Computer*

4  *Int'l*, 2015 WL 5186462, at *5 (finding not wholly groundless InterDigital's assertion that claims

5  involving the relevant contract fell within an identical arbitration agreement).

6          Pegatron's eleventh counterclaim seeks a declaratory judgment of the appropriate FRAND

7  terms for InterDigital's SEPs and requiring InterDigital to license its SEPs to Pegatron on FRAND

8  terms.  Counterclaims ¶¶ 254-57.  Because InterDigital has already given Pegatron a license to

9  InterDigital's SEPs through the PLA, determining whether Pegatron is entitled to a declaration of

10  appropriate FRAND terms and a declaration requiring InterDigital to provide a new license to

11  Pegatron on FRAND terms requires assessing whether the terms of the PLA already comply with

12  InterDigital's FRAND commitments.  Accordingly, Pegatron's eleventh counterclaim for

13  declaratory relief involves the PLA, and InterDigital's assertion that the counterclaim for

14  declaratory relief falls within the arbitration agreement is not wholly groundless.  *See ASUS*

15  *Computer Int'l*, 2015 WL 5186462, at *5 (finding not wholly groundless InterDigital's assertion

16  that claims involving the relevant contract fell within an identical arbitration agreement).

17          Pegatron's twelfth counterclaim seeks a declaratory judgment that InterDigital's SEPs are

18  unenforceable because of InterDigital's alleged misconduct in licensing the SEPs.  Counterclaims

19  ¶¶ 258-63.  Specifically, Pegatron alleges that InterDigital required Pegatron to license non-SEPs

20  and to agree to pay royalties on patents beyond the term of the patents as conditions of Pegatron

21  obtaining a license to InterDigital's SEPs.  *Id.* ¶¶ 259-60.  Pegatron alleges that InterDigital

22  accomplished this by bundling patents together for licensure and by refusing to disclose which

23  patents were SEPs  *Id.*  As the PLA is the license agreement between InterDigital and Pegatron,

24  resolving whether InterDigital engaged in patent misuse through its license agreement with

25  Pegatron will require analyzing the PLA.  ECF No. 10-2.  As such, Pegatron's twelfth

26  counterclaim for declaratory relief involves the PLA, and InterDigital's assertion that the

27  counterclaim falls within the arbitration agreements is not wholly groundless.  *See ASUS*

28
Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

1   *Computer Int'l*, 2015 WL 5186462, at *5 (finding not wholly groundless InterDigital's assertion

2   that claims involving the relevant contract fell within an identical arbitration agreement).

3   Therefore, the Court finds that InterDigital's assertions of arbitrability as to all twelve of

4   Pegatron's counterclaims are not wholly groundless.  Accordingly, the Court GRANTS

5   InterDigital's motion to compel arbitration of Pegatron's counterclaims.  Having found that each

6   of the counterclaims is potentially arbitrable, the Court GRANTS InterDigital's motion to stay

7   proceedings on the counterclaims "to permit an arbitrator to rule on the arbitrability of those

8   issues."  *Qualcomm Inc.*, 466 F.3d at 1375.

9   **IV.   CONCLUSION**

10  For the foregoing reasons, the Court GRANTS InterDigital's Motion to compel arbitration

11  of Pegatron's counterclaims.  The Court GRANTS a stay as to Pegatron's counterclaims.

12  **IT IS SO ORDERED.**

13

14  Dated: January 20, 2016

15  LUCY H. KOH
    United States District Judge

Case No. 15-CV-02584-LHK
ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California